UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| CAIRO JONES, | ) Case No. 1:16CV2504 |
|---|---|
| Plaintiff, | ) |
| v. | ) JUDGE BENITA Y. PEARSON |
|  | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) REPORT AND |
|  | ) <u>RECOMMENDATION</u> |

Plaintiff Cairo Jones ("Jones" or "claimant") challenges the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.

The issue before the court is whether the final decision of the Commissioner is supported by substantial evidence and, therefore, conclusive. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be affirmed.

# I. PROCEDURAL HISTORY

The claimant is a person who received SSI benefits based on disability as a child. (R. 9, PageID #: 64.) As required by law, eligibility for these benefits was redetermined once the claimant reached eighteen years old. *Id.* Jones listed his physical or mental conditions that limit his ability to work as: "chronic asthma, rhinitis, osteomyelitis, season allergies due to asthma." (R. 9, PageID #: 225.) On February 7, 2013, the Social Security Administration determined that claimant was no longer disabled as of that date. (R. 9, PageID #: 124-126, 64.) The determination was upheld upon reconsideration after a disability hearing before a state agency Disability Hearing Officer. (R. 9, PageID #: 129-136, 141-151, 64.) Thereafter, Jones filed a written request for a hearing before an administrative law judge ("ALJ"). (R. 9, PageID #: 171-173.)

An ALJ convened a hearing on May 27, 2015. (R. 9, PageID #: 81-127.) Jones was advised of his right to counsel (*id.* at 83-87), but appeared at the hearing *pro se*, with his mother, and testified. (*Id.* at 87-115.) A vocational expert ("VE") also attended the hearing and provided testimony. (*Id.* at 83, 122-125.)

On September 17, 2015, the ALJ issued her decision, applying the standard five-step sequential analysis to determine whether Jones was disabled. (R. 9, PageID #: 64-74; *see generally* 20 C.F.R. § 416.920(a).) Based on her review, the ALJ concluded Jones was not disabled. (R. 9, PageID #: 64, 74.) The Appeals Council denied Jones's request for review, thus rendering the ALJ's decision the final decision of the Commissioner. (R. 9, PageID #: 53-56.)

Jones now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). The parties have completed briefing in this case.

As a *pro se* plaintiff, Jones' filing lacks argument, analysis and record support, but the court construes the following issues for review, as stated verbatim in Jones' brief:

> The Administrative Law Judge erred when denying eligibility to plaintiff (Cairo) whose combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in (20 CFR 416.909). Cairo Jones battles with Chronic Asthma, obesity, sleep apnea, allergic rhinitis, food hypersensitivity, gastroesophageal reflux disease, depression and personality disorder. Which all collectively hinders him from being able to work. We are asking for the decision to be overturned and for restoration of SSI income and Back pay.

(R. 13, PageID #: 481.)

## II. PERSONAL BACKGROUND INFORMATION

Jones was born on June 8, 1994, and is considered a "younger person" for Social Security purposes. (R. 9, PageID #: 217, 89, 73; *see* 20 C.F.R. § 416.963.) Jones has a high school education, and is able to communicate in English. (R. 9, PageID #: 90, 224, 73.) Jones had no past relevant work. (R. 9, PageID #: 122, 73.)

## III. RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in Jones' brief alleging error by the ALJ. As noted earlier, Jones listed his physical or mental conditions that limit his ability to work as: "chronic asthma, rhinitis, osteomyelitis, season allergies due to asthma." (R. 9, PageID #: 225.)

Jones appeared for a consultative internal medical examination with Dorothy A. Bradford, M.D., on February 1, 2013. (R. 9, PageID #: 376-383.) Dr. Bradford performed manual muscle testing, and assessed Jones' range of motion, all of which tested normal. *Id.* at 376-379, 382. Dr. Bradford obtained the claimant's medical history from claimant and his mother, which she judged to be reliable. *Id.* at 380. Dr. Bradford noted Jones' chief complaint was asthma, with a history of asthma since childhood, but no hospitalizations since 2006 (which occurred following smoke inhalation after a fire). *Id.* at 380, 383. The doctor stated the triggers for his asthma were environmental, seasonal changes, and activity, and that Jones uses his rescue inhaler several times a week. *Id.* at 380. Dr. Bradford also noted that Jones has sleep apnea, and uses a CPAP and oxygen at night. *Id.*

Dr. Bradford's review of Jones' systems was unexceptional. (R. 9, PageID #: 380.) She assessed a normal activity and energy level, no fatigue or general feelings

---

[1] The summary of relevant medical evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

of being ill or malaise.  *Id.*  She noted occasional respiratory wheezing.  *Id.*  Dr. Bradford also noted occasional pain in the lower left leg, where Jones had a bone infection.  *Id.* at 381.  Upon examination, Dr. Bradford found normal respiratory effort.  *Id.*  The doctor found appropriate judgment and insight, and that Jones was oriented to person, place, and time, with normal recent and remote memory.  *Id.* at 383.

Dr. Bradford concluded that Jones had mild well-controlled asthma.  She stated that the examination was remarkable only for a BMI of 36.68, and in her medical opinion "there are no activity restrictions."  (R. 9, PageID #: 383.)

Jones also presented for a psychological evaluation on January 21, 2013, with psychologist David V. House, Ph.D.  (R. 9, PageID #: 347-356.)  During the clinical interview with Dr. House, Jones rated his sleep as "okay at times," but said he had trouble falling asleep at times, and that he is a light sleeper.  *Id.* at 350.  Jones denied any depression, anxiety, or obsessive behavior.  *Id.*  Dr. House stated Jones was oriented to person, place, time, and situation.  *Id.* at 351.  Remote memory appeared to be fair, and in terms of recent memory, Jones was able to recall two out of three objects after five minutes.  *Id.*

Dr. House administered a psychometric test, the Wechsler Adult Intelligence Scale-IV, to Jones.  (R. 9, PageID #: 352-353.)  The results placed Jones in the borderline range of adult intellectual functioning.  *Id.* at 352.  There was a notable differential between the Verbal and Performance scores, which Dr. House said might indicate social difficulties or social isolation.  *Id.*  Dr. House noted that Jones

had the most difficulty with "reproductive perceptual motor organization analysis and synthesis," and also difficulties with abstract organizing abilities. *Id.* at 353. Dr. House viewed Jones' strengths were primarily in logical associations of verbal concepts, with a good fund of information and computational skills. *Id.*

Dr. House opined that Jones "would suffer from a diagnosis of Learning Disorder Not Otherwise Specified, Borderline Intellectual Functioning and Personality Disorder Not Otherwise Specified." (R. 9, PageID #: 353; *see also* PageID #: 355.) Dr. House's functional assessment of Jones was that his short- and long-term memory appear intact, and he should be able to carry out instructions. *Id.* at 354. Jones' concentration and attention are "generally intact," with a large extent of variation. *Id.* Jones' ability to present a narrative is somewhat limited, Dr. House noted, although he should be able to follow multi-step instructions if kept simple. *Id.* Dr. House opined that Jones' major difficulty is in social functioning; he does not "get out much," although he was not hostile or obstructive toward the examiner. *Id.* Dr. House viewed Jones as "socially inept." *Id.*

Dr. House also provided an opinion on Jones' abilities and limitations in responding to work pressures in a work setting:

> That he can cope with stress appears limited to some degree due to his social difficulties. He does not suffer a direct emotional Axis I disorder, but it appears his lack of social skills is likely more endemic and chronic.

(R. 9, PageID #: 354.) Dr. House stated that functionally, Jones "demonstrates moderate impairment in employability." *Id.* at 355. Dr. House opined that Jones'

6

"prognosis is fair to poor. He demonstrates a chronic condition[2], but he does have some strengths, namely his verbal I.Q." *Id.*

Several non-examining consultants reviewed the record, and provided additional opinions. On February 6, 2013, Gary Hinzman, M.D., a medical consultant, reviewed the medical evidence and provided a Physical Residual Functional Capacity Assessment. (R. 9, PageID #: 384.) Dr. Hinzman determined that Jones had no exertional limitations, and no postural, manipulative, visual, or communicative limitations. (R. 9, PageID #: 384-388, 391.) As to environmental limitations, Dr. Hinzman found that Jones should avoid concentrated exposure to humidity; fumes, odors, dust, gases, or poor ventilation; and extreme cold or heat, due to his asthma. *Id.* at 388.

Dr. Hinzman determined that Jones' condition of chronic asthma was supported by the medical evidence in the file, but his condition of osteomyelitis, along with alleged weakness in his legs, was not found credible as it was not supported by recent medical evidence. (R. 9, PageID #: 389.) Dr. Hinzman found no objective findings to support osteomyelitis after 2005. *Id.* Dr. Hinzman stated that swelling in Jones' feet with activity may be attributable to his morbid obesity, as there are no objective findings that would support water retention. *Id.* "His alleged walking limitations of one block may be due to asthma, but is most likely due to his morbid obesity." *Id.* at 389, 391.

---

[2] The "chronic condition" referred to in the psychologist's prognosis is presumably

7

On August 26, 2013, consultant Maria Gongbalay, M.D., provided a Physical Residual Functional Capacity Assessment. (R. 9, PageID #: 429-436.) Dr. Congbalay determined that Jones required the same environmental limitations (*id.* at 433) as Dr. Hinzman provided, and her assessment was otherwise identical (*id.* at 434).

On January 31, 2013, consultant Patricia Semmelman, Ph.D., provided a Mental Residual Functional Capacity Assessment. (R. 9, PageID #: 357-359.) Dr. Semmelman found that Jones was moderately limited in several areas, but markedly limited in none. *Id.* at 357-358. Dr. Semmelman summarized that Jones:

> . . . can interact occasionally and superficially and receive oral and more simple written instructions and ask questions appropriately in a smaller or more solitary or less public to nonpublic work setting. He can cope with the ordinary and routine changes in a work setting which is not fast paced or strict time or production requirements.

*Id.* at 359. Kristen Haskins, Psy.D., provided a Mental Residual Functional Capacity Assessment on August 28, 2013, which was essentially identical. (R. 9, PageID #: 451-453.)

Jones presented at an April 15, 2015, follow-up visit for treatment of his asthma with his treating physician, Laura Milgram, M.D. (R. 9, PageID #: 461-467.) Dr. Milgram noted that there was a seasonal increase in symptoms, and reviewed a medication plan for treatment. *Id.* at 464-465, 466. The doctor recommended a follow up appointment in six months. *Id.* at 465.

---

the "lack of social skills" that Dr. House referred to earlier. *See id.* at 354.

The record also includes a medical source statement dated January 15, 2016, ostensibly from Dr. Milgram. (R. 9, PageID #: 468-469.) The statement is a two-page form listing various disabilities, apparently to qualify a person for the Fixed Route Disability Program, but the form doesn't indicate which disabilities apply to Jones. *Id.* The relevant portion of the form reads: "The impairment or disability is considered...," and the box "Permanent" is ticked. *Id.* at 468. Then, under "identify the following criteria that apply," the word "pulmonary" is written in. *Id.* On the next page, the final paragraph certifying that "the applicant is disabled as defined by the above criteria" has been initialed and dated. *Id.* at 469.

## IV. ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in her September 17, 2015, decision:

> 1. The claimant attained age 18 on June 8, 2012, and was eligible for supplemental security benefits as a child for the month preceding the month in which he attained age 18. The claimant was notified that he was found no longer disabled as of February 7, 2013, based on a redetermination of disability under the rules for adults who file new applications.
>
> 2. Since February 7, 2013, the claimant has had the following severe impairments: borderline intellectual functioning, learning disability, personality disorder, asthma, and obesity (20 CFR 416.920(c)).
>
> 3. Since February 7, 2013, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).

9

4. After careful consideration of the entire record, the undersigned finds that since February 7, 2013, the claimant has had the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except the claimant can have no concentrated exposure to pulmonary irritants, extreme temperatures, and humidity. The claimant is capable of performing simple, routine tasks with simple short instructions. The claimant can make simple workplace decisions but must be in an environment with few workplace changes. The claimant is unable to perform work with fast, pace/production quotas. The claimant cannot be responsible for the safety of others and can have only superficial interaction with the coworkers, supervisors, or the public.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on June 9, 1994, and is a younger individual age 18-49 (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Since February 7, 2013, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).

10. The claimant's disability ended on February 7, 2013, and the claimant has not become disabled again since that date (20 CFR 416.987(e) and 416.920(g)).

(R. 9, PageID #: 66-67, 69, 73-74.)

## V. DISABILITY STANDARD

A claimant is entitled to receive SSI benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381.

A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 416.905(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination. *See* 20 C.F.R. § 416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability.[3] 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id.* § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).
>
> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

---

[3] The first step is not used for redetermining disability at age 18. (R. 9, PageID #: 65, citing 20 C.F.R. § 416.987(b).)

*Wilson v. Commissioner of Social Security,* 378 F.3d 541, 548 (6th Cir. 2004); *see also* 20 C.F.R. § 416.920(a)(4).

## VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales,* 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari,* 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Wright,* 321 F.3d at 614; *Kirk,* 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright,* 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may examine all the

evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision. See *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner,* No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston,* 245 F.3d at 535).

## VII. ANALYSIS

Jones presents the following issues for the court's review, verbatim:

> The Administrative Law Judge erred when denying eligibility to plaintiff (Cairo) whose combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in (20 CFR 416.909). Cairo Jones battles with Chronic Asthma, obesity, sleep apnea, allergic rhinitis, food hypersensitivity, gastroesophageal reflux disease, depression and personality disorder. Which all collectively hinders him from being able to work. We are asking for the decision to be overturned and for restoration of SSI income and Back pay.

(R. 13, PageID #: 481.)

As stated by the Commissioner, Jones contends that his combined physical and mental impairments resulted in a disability. The Commissioner argues that the record fails to substantiate Jones' contentions, and that substantial evidence supports the ALJ's determination that Jones could perform a reduced range of medium level work. (R. 17, PageID #: 499, citing R. 9, PageID #: 66-73.)

The ALJ has the responsibility for reviewing all the evidence in making his determinations. 20 C.F.R. § 416.927(e)(2). The ALJ evaluates every medical opinion received in evidence. 20 C.F.R. § 416.927(c). The ALJ will consider statements that have been provided by medical sources, whether or not based on formal medical examinations, 20 C.F.R. § 416.945(a)(3), but the responsibility for

13

assessing the claimant's residual functional capacity rests with the ALJ. 20 C.F.R. § 416.946(c).

Jones contends that his asthma is uncontrolled. (R. 13, PageID #: 480.) The ALJ determined that the record demonstrates that Jones' asthma is "well controlled by current medications," that Jones has had no hospitalizations for asthma since 2006, and he did not exhibit notable limitations on physical examination. (R. 9, PageID #: 70, citing PageID #: 380-383.) The ALJ cites to Dr. Bradford's consultative exam and her assessment that Jones had mild asthma that is well controlled. (R. 9, PageID #: 383.) Dr. Bradford stated that "there are no activity restrictions." *Id.* The Commissioner argues that the record does not indicate Jones had uncontrolled asthma. (R. 17, PageID #: 499, citing R. 9, PageID #: 70.) Dr. Milgram did not indicate that Jones' asthma was uncontrolled at the April 2015 follow-up visit, during which the Commissioner indicates the doctor simply reviewed the existing medication plan. (R. 17, PageID #: 499-500, citing R. 9, PageID #: 461, 464.) The Commissioner adds that Jones received very infrequent treatment for his asthma, suggesting the condition was well under control. (R. 17, PageID #: 499-500, citing R. 9, PageID #: 106 (sees asthma doctor twice yearly), and *Strong v. Social Sec. Adm'n*, No. 02-5604, 2004 WL 232242, at *4 (6th Cir. Feb. 3, 2004).)

Jones indicates that he has "other medical issues," which require an "upper GI endoscopy," and also refers to "belly pain" that he suffers daily. (R. 13, PageID #: 480.) The Commissioner interprets these complaints to refer to Jones'

14

gastroesophageal reflux disease, which the ALJ determined was not severe. (R. 17, PageID #: 500, citing R. 9, PageID #: 66.) The ALJ noted that physical examinations tended to note few, if any signs of this impairment. *Id.* For example, Dr. Bradford's review of Jones' systems was unremarkable. (R. 9, PageID #: 383.) A gastroenterologist diagnosed Jones' stomach pains in February 2013 attributable to peptic ulcer disease and recommended an antacid and an upper endoscopic evaluation. (R. 9, PageID #: 406.) Jones' limited treatment for stomach pain fails to corroborate the existence of a severe impairment that might support additional work restrictions. In addition, Jones did not list stomach pain among the physical conditions that limit his ability to work. (R. 9, PageID #: 225.)

Jones also contends that his sleep apnea is debilitating. (R. 13, PageID #: 480.) The ALJ noted that the single sleep study in the record indicated the Jones had "mild obstructive sleep apnea," and determined that this was not a severe impairment as defined in the regulations. (R. 9, PageID #: 66, citing PageID #: 423.) At that time (November 2011), it was recommended that Jones visit an ear, nose, and throat specialist for further evaluation, but there is no indication in the record that he did so. (R. 9, PageID #: 423; R. 17, PageID #: 500.) Dr. Bradford noted that Jones used a CPAP and oxygen for his sleep apnea, and there is no indication in the medical record that these measures were not effective. (R. 9, PageID #: 380, 383.)

Finally, Jones' brief alleges that he has clinical depression. (R. 13, PageID #: 480.) Again, Jones' application did not list depression as one of the conditions

15

limiting his ability to work. (R. 9, PageID #: 225.) There is no evidence of any treatment for depression in the medical record. At his January 2013 psychological evaluation with Dr. House, Jones denied any depression or anxiety. (R. 9, PageID #: 350.) Neither Dr. Semmelman nor Dr. Haskins suggested any depression-related disorder. (R. 9, PageID #: 359, 364, 440, 453.)

The court finds that the ALJ's decision is supported by substantial evidence, and Jones has failed to cite specific medical evidence in the record to the contrary.

Jones further alleges that his combination of impairments is so severe as to meet or medically equal the criteria of an impairment listed in 20 CFR 416.909.[4] (R. 13, PageID #: 481.)

It is claimant's burden to bring forth evidence to establish that his impairments meet or are medically equivalent to a listed impairment. *Ridge v. Barnhart*, 232 F.Supp.2d 775, 787 (N.D. Ohio 2002). The claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing. *Smith-Johnson v. Commissioner*, No. 13-1696, 2014 WL 4400999, at *6 (6th Cir. Sept. 8, 2014) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). An impairment or combination of impairments is considered medically equivalent to a listed impairment "if the symptoms, signs and laboratory findings as shown in medical evidence are at least equal in severity and duration to the listed impairments." *Ridge*, 232 F.Supp.2d at 787-788 (quoting *Land v. Secretary, HHS,*

---

[4] Jones cites to Section 416.909, which concerns the length an impairment must last. The listed impairments are found in 20 C.F.R. Part 404, Subpart P, Appendix 1.

16

814 F.2d 241, 245 (6th Cir. 1986) (per curiam)). Jones fails to identify which Listing his impairments allegedly meet, and he fails to cite any medical evidence in the record that would satisfy the criteria for any Listing.

For the foregoing reasons, the court finds that the decision of the Commissioner is supported by substantial evidence. The record evidence as discussed in the ALJ's decision is such that "a reasonable mind might accept [it] as adequate" support for the Commissioner's final benefits determination. *See Kirk,* 667 F.2d at 535 (quoting *Richardson,* 402 U.S. at 401). Accordingly, the undersigned recommends that the decision of the Commissioner be **AFFIRMED**.


                                                   s/ David A. Ruiz
                                                   David A. Ruiz
                                                   United States Magistrate Judge


Date: October 16, 2017


OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985); *see also United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).